IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LONNIE WILLIAMS**      ] | |
|     **Plaintiff,**      ] | |
| ] | |
| **v.**      ] | **CV-07-BE-1520-S-KOB** |
| ] | |
| **THOMPSON TRACTOR COMPANY,**      ] | |
| **INC.,**      ] | |
|     **Defendant.**      ] | |

### MEMORANDUM OPINION

This case comes before the court on Defendant Thompson Tractor Company, Inc.'s motion for summary judgment (doc. 25). For the reasons stated below, the court will GRANT Defendant's motion and will DISMISS this case with prejudice.

### I. BACKGROUND

Sometime in June 2006, Plaintiff Lonnie Williams, an African-American, went to Defendant's place of business seeking employment. Mr. Williams knew of no specific job openings, but instead claims that several acquaintances suggested he apply for a job at Thompson Tractor. The receptionist informed Mr. Williams that Thompson Tractor accepts employment applications only on Tuesday and Thursday mornings. Thompson Tractor accepts applications regardless of immediate needs or specific job openings.

On Tuesday, June 27, 2006, Mr. Williams returned to Thompson Tractor to complete an employment application at the appropriate time. Mr. Williams' employment application indicated that he sought employment as "operate – part runner – counter sales."[1] At the time one

---

[1] During his deposition, Mr. Williams disputed that he applied for a position "operating" anything. He does not dispute that he sought a position in the parts department.

applies for a position in the parts department, the applicant must complete the Wonderlic Personnel test and the Bennett Mechanical test.  If an applicant scores 20 or higher on the Wonderlic test and at least 70% on the Bennett test, he must take and pass a longer Clerical test.  Thompson Tractor then interviews the most qualified individuals from the pool of applicants who passed all three tests.  Mr. Williams, along with thirteen other applicants,[2] completed the Wonderlic and Bennett tests on June 27, 2006.

Of the fourteen applicants on June 27, 2006, seven, including Mr. Williams, failed one or both tests.  Mr. Williams scored a 13 on the Wonderlic test and 1% on the Bennett test.  From June 27, 2006 through the end of 2006, Thompson Tractor hired four employees for the parts department.  All four passed the Wonderlic, Bennett, and Clerical tests.  Their scores on the Wonderlic and Bennett tests were within the following ranges: 22-31; and 78-99%.

When Mr. Williams did not hear anything from Thompson Tractor after submitting his application, he called Defendant's business twice and requested to speak with Mike Thompson, the president, on both occasions.  The receptionist informed Mr. Williams that Mr. Thompson was busy both times.  Mr. Williams then visited Thompson Tractor's place of business.  Mr. Williams wished to speak personally with Mr. Thompson.  He instead spoke with either Frank Wright, the director of human resources, or Bill Mooney, the vice president.[3]  Mr. Williams testified that he again tried to call after this visit to Defendant's premises, but "they was [sic] avoiding my phone calls."  Mr. Williams returned to Thompson Tractor's place of business and

---

[2] Mr. Williams allegedsthat all the other applicants were "Caucasian."

[3] Mr. Williams stated in his deposition that he met with Mr. Wright.  Mr. Wright's affidavit does not indicate that he ever met Mr. Williams, but instead states that Mr. Williams met with Mr. Mooney.  This dispute is immaterial; the parties do not dispute that Mr. Williams visited Thompson Tractor's place of business.

again requested to speak with Mr. Thompson. Mr. Williams alleges that he then spoke with Mr. Thompson on the receptionist's telephone.[4] According to Mr. Williams, Mr. Thompson informed him that Thompson Tractor would not give him employment with a "hostile attitude" and that Mr. Williams should not return to Defendant's property.

On this second of Mr. Williams' visits to Thompson Tractor, someone at Thompson Tractor contacted the City of Tarrant Police Department for advice regarding how to handle Mr. Williams' visits. Two police officers picked up Mr. Williams, returned him to Thompson Tractor's office, and instructed Mr. Williams not to return to Thompson Tractor's premises. Mr. Williams alleges that the police officers "harassed" him and "mentally gave [him] a scare" but did not physically harm him.

On August 20, 2007, Mr. Williams filed a one-count complaint in this court alleging race discrimination against Thompson Tractor. Mr. Williams seeks placement in the position for which he applied, back pay, injunctive relief, pre-judgment interest, attorneys' fees, costs, compensatory damages for benefits and emotional distress, and punitive damages. Mr. Williams' later-filed list of damages indicates that he seeks a total of $4,065,000. On January 15, 2008, Defendant Thompson Tractor filed the current motion for summary judgment. Plaintiff Lonnie Williams responded on January 22, 2008, and filed an additional submission on January 24, 2008.[5] On February 13, 2008, Defendant waived its right to reply.

---

[4] Defendant does not include this telephone conversation in its "Narrative Summary of Undisputed Facts," yet also does not expressly deny that the conversation occurred. Again, however, whether this conversation occurred is immaterial. The parties do not dispute that Mr. Williams visited Thompson Tractor's place of business a second time after completing his employment application.

[5] Mr. Williams has filed numerous letters with the court throughout this litigation. Because Mr. Williams is unrepresented, the court considered all of Mr. Williams' submissions in ruling upon the current motion, not just those filed within the time for responding to the motion.

## II.  STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact exist.  Fed. R. Civ. P. 56.  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  Disagreement between the parties is not significant, however, unless the disagreement presents a "genuine issue of material fact."  *Id.* at 247-48.  A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 251-52.

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Summary judgment is mandatory against a party who fails to show the existence of an element essential to the proof of its case at trial.  *Celotex*, 477

U.S. at 322.  However, the nonmovant can defeat summary judgment by showing *either* a genuine issue of material fact *or* that the movant is not entitled to judgment as a matter of law.

### III.  DISCUSSION

To establish a *prima facie* case of discriminatory failure-to-hire based upon circumstantial evidence, Mr. Williams must show that "(1) he was a member of a protected class; (2) he applied and was qualified for a position for which the defendant was accepting applications; (3) despite his qualifications, he was not hired; and (4) after his rejection the position remained open or was filled by a person outside his protected class." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999).  In this Circuit, the plaintiff's *prima facie* case of racially discriminatory failure-to-hire must include evidence that other equally or less qualified employees not members of the plaintiff's race were hired.  *Jones v. Siegelman*, 2001 WL 1772159, at *5 (M.D. Ala. July 9, 2001) (citing *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1104 (11th Cir. 2001)).

If Mr. Williams is able to establish a *prima facie* case of discrimination, the burden shifts to Thompson Tractor to articulate a legitimate, non-discriminatory reason for not hiring Mr. Williams.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If Thompson Tractor does so, Mr. Williams may avoid summary judgment only by showing that Defendant's articulated reason is pretextual.  *See Schoenfeld*, 168 F.3d at 1269 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

The court need not engage in a lengthy analysis of each element because one undisputed fact is dispositive of this case: Mr. Williams failed both the Wonderlic and Bennett tests.  Plaintiff's failure on the tests both undermines his *prima facie* case and provides Thompson Tractor a legitimate, non-discriminatory reason for not hiring Mr. Williams.  Mr. Williams cannot show that he was qualified for a position with Thompson Tractor – an essential element of

his *prima facie* case. Rather, he failed to achieve the minimum required scores on either the Wonderlic or Bennett tests.[6] In addition, the undisputed facts show that all four applicants actually hired for the parts department achieved the required scores on all required tests.

Because Thompson Tractor hires only those applicants who pass both tests, Mr. Williams' failure on the tests also gives Defendant an adequate, non-discriminatory reason for not hiring Mr. Williams. In short, Mr. Williams has not shown, either in his *prima facie* case or in rebutting Thompson Tractor's non-discriminatory reason, that Thompson Tractor's decision not to hire him was based upon his race.[7] *See, e.g.*, *Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir. 1997) (holding that "causal link" could not be established in retaliation case where plaintiff failed a test necessary for employment). The court concludes, therefore, that Mr. Williams failed to establish a *prima facie* case of discrimination, or, alternatively, failed to show that Defendant's articulated non-discriminatory reason for not hiring him was pretext.

Mr. Williams, in the scheduling conference with the court, in his numerous written submissions, and in his deposition, has indicated that the police officers' "harassment" is equally, if not more, upsetting to him. Although his complaint includes only one count, race discrimination, the court, interpreting this *pro se* Plaintiff's submissions liberally, will nonetheless briefly address Mr. Williams' allegations of police harassment.

---

[6] Prior to Defendant's motion for summary judgment, Mr. Williams filed his resume (doc. 15). Mr. Williams' prior work history does not raise a genuine issue of material fact as to his qualifications to work for Thompson Tractor because Mr. Williams did not dispute that Defendant requires every applicant to pass the tests to qualify for employment at Thompson Tractor, regardless of an applicant's experience.

[7] In fact, in his deposition, Mr. Williams admitted that he did not know Thompson Tractor's motivation for its decision not to hire him: ". . . I'm no mind reader, I've got no idea of the mindset of people of that particular authoritative capacity which own that particular company. I don't know what they are thinking, I'm just going by what I'm thinking." (Pl.'s Dep. 121).

Mr. Williams submitted no evidence from which this court can conclude that the police violated any of Mr. Williams' civil rights.  Even assuming a violation occurred, this court has found no law to support that Thompson Tractor may be held liable merely for <u>calling</u> the police without evidence that Defendant either directed the violation of civil rights[8] or provided the police with a false statement leading to their actions.  *See, e.g.*, *Shqeirat v. U.S. Airways Group, Inc.*, 515 F. Supp. 2d 984, 998 (D. Minn. 2007) ("A private person is not liable under § 1983 merely for contacting the police and invoking a police officer's authority. . . .  Instead, '[p]rivate parties are only liable under 42 U.S.C. § 1983 when they have been jointly engaged with public officers in the denial of civil rights.'") (citations omitted); *Housman v. Meijer, Inc.*, 35 F.3d 565 (6th Cir. 1994) (holding that a proprietor owes no duty to avoid calling the police in good faith and is not responsible for subsequent police action that the proprietor does not direct).  Thus, Plaintiff failed to show any grounds upon which this Defendant can be held liable for the conduct of the City of Tarrant police officers.

### IV.  CONCLUSION

For the reasons stated above, the court concludes that Defendant's motion for summary judgment is due to be GRANTED, and the court will DISMISS WITH PREJUDICE all claims against Defendant Thompson Tractor.  The court will enter a separate order consistent with this memorandum opinion.

---

[8] Mr. Williams does not allege, and has presented no evidence, that Thompson Tractor directed the police to engage in certain behavior.  In fact, he acknowledged in response to Defendant's answer that "theres [*sic*] no way for defendant to control the police once you envolve [*sic*] them . . . ." (doc. 16, ¶ 15).

-8-

DATED this 28th day of February, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE